UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KYNTREL TREVYONE JACKSON,

Plaintiff,

v.

B. BERKEY, et al.,

Defendant.

CASE NO. 3:19-CV-6101-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: March 12, 2021

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Currently pending before the Court is the motion of Defendants for summary judgment. Dkt. 51.

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, alleges he has been deprived of soap in violation of his Eighth Amendment rights because he has an allergy to the only soap available to prisoners confined in the Intensive Management Unit ("IMU") of the Stafford Creek Corrections Center ("SCCC"). Dkt. 11 at 1. Plaintiff also alleges he was retaliated against after filing a complaint asserting his medical examination for allergies was improperly conducted. Dkt. 11 at 7, 9–10. Finally, plaintiff claims the prison's grievance procedures violate

his due process and First Amendment rights because they do not provide for a way to validate the date upon which a grievance or response is received. Dkt. 11 at 11 at 6–7. Defendants have moved for summary judgment, arguing plaintiff has failed to present evidence supporting his Eighth Amendment claim, failed to state a viable claim for retaliation, his grievance process claims fail as a matter of law, and defendants are entitled to qualified immunity. Dkt. 35.

After reviewing the relevant record, the Court finds plaintiff has failed to adduce evidence of a soap allergy sufficient to show an excessive risk to his health and safety in violation of the Eighth Amendment and therefore his claims against the medical defendants should be dismissed. Plaintiff has failed to establish the remaining defendants' personal participation in a violation of his Eighth Amendment rights. Plaintiff's retaliation claim fails because he has failed to establish any adverse action against him caused by his protected activity. Finally, Plaintiff's claims of an allegedly flawed DOC grievance process fail as a matter of law because plaintiff has no First or Fourteenth Amendment right to a particular grievance process. Accordingly, the Court recommends defendants' motion be granted.

## I.    Background and Procedural History

Plaintiff initiated this matter on November 15, 2019. Dkt. 1. On January 7, 2020—after twice being required to correct deficiencies in his pleading—plaintiff filed the operative amended complaint. Dkt. 11.[1] Plaintiff brings claims against the Washington State Department of Corrections ("DOC") Secretary, Stephen Sinclair; the DOC Intensive Management Unit ("IMU") Manager, Timothy Thrasher; SCCC Superintendent R. Haynes; two DOC headquarters

---

[1] Plaintiff's complaint is signed under penalty of perjury. Dkt. 11, at 138. Therefore, his complaint's allegations are considered as evidence in opposition to summary judgment, but only if they are based on personal knowledge and set forth facts that would be admissible in evidence. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Grievance Program Managers, Dale Caldwell and Ronald Frederick; SCCC medical provider ARNP Bobbie Berkey and nurses A. Johnson and K. Cresswell; SCCC Health Services Managers Keith Parris and Tim Taylor; SCCC grievance coordinator, Dennis Dahne; DOC Prison Rape Elimination Act ("PREA") Coordinator, Beth Schubach; and DOC Health Services Administrator Ronna Cole. Plaintiff requests both monetary damages and injunctive relief—namely, that the IMU store list include a "multi-choice hygi[e]ne list," that medical staff "stop demanding pro[o]f of allergy to receive an HSR [Health Status Report] for being allergic to anything," and that the grievance policy be updated. Dkt. 11 at 139.

Defendants served plaintiff with a *Rand* notice and copies of the motion for summary judgment and the supporting declarations of Dustin Hird[2], Bobbie Berkey, Beth Schubach and Keith Parris, on October 27, 2020. *See* Dkts. 51, 52, 53, 54, 55 and 56. Plaintiff filed a response to defendants' motion for summary judgment on November 18, 2020. Dkt. 64. Defendants did not file a reply.

## II.    Facts

Plaintiff alleges he has effectively been denied soap since January 2019 because he claims he is allergic to the only soap available on the IMU store list. Dkt. 11 at 1. Before his arrival at SCCC, on August 12, 2019, plaintiff was housed at Clallam Bay Corrections Center ("CBCC") and Washington Corrections Center ("WCC"), where he also claims he was deprived

---

[2] The Hird Declaration attaches 467 pages of plaintiff's medical records, which appears to be his entire medical and mental health record for a three-year period of time. Dkt. 52 at 1-2; Dkt. 52-1. The vast majority of these records appears to have no bearing on the medical matters plaintiff has put at issue in this case. Plaintiff has not objected to the unsealed filing of these extraneous materials, so the Court will not *sua sponte* seal them. However, the Court will not "comb the record" for evidence. *See Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988). The Court has reviewed and considers only the records expressly cited in defendants' briefing.

of soap for the same reasons. *Id*. Plaintiff has filed three separate lawsuits regarding his alleged deprivation of soap at the three institutions. *See Jackson v. Thrasher*, No. 20-5016 BHS-DWC (claims arising during confinement at CBCC); *Jackson v. Sinclair*, No. 20-5017 BHS-DWC (claims arising during confinement at WCC). This matter pertains to the period of Plaintiff's confinement at SCCC from August 12, 2019 to the time plaintiff filed his complaint. *Id*.

### A. Access to Soap

Plaintiff asserts that although there are alternative soaps "readily available to [general] population prisoners," defendants refused to provide plaintiff with alternative soap. Dkt. 11 at 1. Plaintiff further claims defendants ARNP Berkey and RNs Johnson and Creswell refused to provide him with alternative soap after his medical kites and a visit to sick call. *Id.* at 2. Regarding the other defendants, plaintiff alleges defendants Thrasher, Sinclair, and Caldwell control the IMU store list and are responsible for refusing to change it and defendants Dahne and Frederick are also responsible for the lack of soap options on the IMU store list. *Id.* Plaintiff alleges defendants Taylor and Harris denied him access to alternative soap in their responses to his medical kites. Dkt. 11 at 4. Finally, plaintiff groups defendants Schubach and Cole into his allegations of soap deprivation, Dkt. 11 at 1 but makes no specific soap-related allegations against them.

Defendants submitted plaintiff's medical records showing he was examined for his complaints of a soap allergy, with no symptoms found, multiple times before he was transferred to SCCC. While at CBCC, plaintiff was examined on June 11, 2019, immediately after his shower, by Dr. William Aurich. Dkt. 52-1 at 43. Dr. Aurich found "no sign or symptoms of allergy—no rash no swelling no shortness of breath." Dkt. 52-1 at 43. Dr. Aurich's medical file notes state that corrections officers reported plaintiff possessed used soap in his cell and had

carried it to the shower in his shower roll. *Id*. In a subsequent report in response to a grievance from plaintiff, Dr. Aurich noted that notwithstanding the absence of signs or symptoms of an allergy at the time of examination, if plaintiff were to develop an allergy in the future, Dr. Aurich "would issue an HSR [Health Status Report][3] for him to avoid indigent soap and provide an alternative form of hygiene" Dkt. 64 at 135. Plaintiff was next seen at CBCC at his cell front on July 9, 2019 after filing additional medical kites and was informed the soap he had requested, Lever 2000, was "high-perfume and will cause more problems." Dkt. 52-1 at 42.

After plaintiff's transfer to WCC, where he continued to complain of a soap allergy, he was seen at sick call on July 31, 2019. Dkt. 52-1 at 41. ARNP Palmer conducted an examination, found no evidence of allergies, and after contacting custody officials, was informed and told plaintiff that the IMU soap was hypoallergenic. *Id*.

Plaintiff was transferred to SCCC in August 2019. Dkt. 11 at 1. He filed a medical kite claiming a soap allergy on September 1, 2019 and was advised by defendant Johnson to be seen at sick call if he was experiencing pain. Dkt. 52-1 at 20. Defendant filed additional kites on September 5 and September 10, 2019, reporting in the latter that his symptoms included "puking up blood" and "developing serious open wound skin rashes" and chipping two teeth. Dkt. 52-1 at 305. Plaintiff was scheduled for sick call and was seen by defendant ARNP Berkey on September 11, 2019. Dkt. 52-1 at 38; Dkt. 53 at 2. Defendant Berkey's examination "revealed no findings to support a soap allergy"; there were "no rashes or breakdown of his skin" and no wounds on his body. Dkt. 52-1 at 38; Dkt. 53 at 2. Defendant Berkey also conducted a chart

---

[3] According to defendant Taylor's response to plaintiff's interrogatories, an HSR is "a method for health care staff to communicate essential information for management of patients to non-clinical staff. HSRs are issued by . . . medical . . . providers in order to provide medically necessary care." Dkt. 64 at 87.

1  review and noted the earlier findings of no allergies by medical providers at CBCC and WCC.

2  Dkt. 53 at 2. She also noted the reference in plaintiff's medical records to his having been

3  observed "using hygiene products concurrent [with] these complaints." Dkt. 52-1 at 38.[4]

4  Defendant Berkey has submitted a declaration stating an allergy to soap would not cause the

5  symptoms—chipped teeth, open wounds and vomiting blood—of which plaintiff complained.

6  Dkt. 53 at 2.

7      Plaintiff continued to complain of a soap allergy and was next seen on October 30, 2019

8  by SCCC ARNP Scott Light. Dkt. 52-1 at 35. Mr. Light noted plaintiff's medical charts showed

9  a lack of allergy symptoms on prior examinations. *Id*. Plaintiff refused a full examination unless

10  photos could be taken, but Mr. Light's observation of plaintiff's face showed "quite mild"

11  pupules "consistent with possible milia." *Id*. He concluded plaintiff's complaint of "allergy to the

12  hypoallergenic soap allowed in the [IMU]" was "unverified." *Id*.

13      On November 22, 2019, plaintiff was again evaluated for complaints of a soap allergy, by

14  SCCC Medical Director Dr. Ryan Herrington. Dkt. 52-1 at 21–30. Dr. Herrington did not make

15  any findings of an allergy; instead, he noted "mild folliculitis" which might improve if plaintiff

16  used soap, and an unrelated abnormal mole. Dkt. 52-1 at 21–22. Subsequent records indicate the

17  mole was removed on January 10, 2021, biopsied, and found to be non-cancerous. Dkt. 52-1 at

18  18–19.

19

20

---

21

22  [4] Plaintiff takes issue with this note because defendant Berkey identifies WCC as the
institution where plaintiff's soap use was observed, and he contends he never used the soap
provided to him at WCC. Dkt. 11 at 4. However, the reference to WCC appears to have been a
23  scrivener's error; instead, plaintiff's medical file shows it was Dr. Aurich at CBCC who noted
the observations of plaintiff's use of hygiene products during a shower immediately preceding
24  his examination. Dkt. 52-1 at 43.

1    B.  *PREA Claim and Alleged Retaliation*

2    Plaintiff took exception to defendant Berkey's examination of his chest and back during

3    his sick call visit on September 11, 2019 and the next day filed a complaint under the Prison

4    Rape Elimination Act ("PREA"), as well as a complaint with the Department of Health. Dkt. 11

5    at 8–9, 54[5], 70. Plaintiff alleges defendants Schubach, Cole, Parris and Johnson retaliated against

6    him for filing the PREA complaint. Dkt. 11 at 7. Specifically, plaintiff alleges the following acts

7    by the defendants constitute retaliation: (1) defendants Schubach and Cole refused to interview

8    plaintiff and prematurely closed the PREA investigation seven days after the complaint was

9    filed; (2) defendant Parris ignored plaintiff's kites seeking anti-depressant medication to address

10   his distress from defendant Berkey's alleged misconduct; (3) defendant Johnson continued to

11   work in the IMU unit where defendant was housed and harassed him by "bang[ing] on [his]

12   door" during pill call on December 7, 2019; and (4) plaintiff was denied any medical treatment

13   without the involvement of defendant Johnson, including treatment of his potentially cancerous

14   mole. Dkt. 11 at 9–11.

15   Defendants submitted the declaration of defendant Schubach, together with DOC's

16   PREA investigation file. Dkts. 54, 54-1. Schubach declares the PREA complaint remained open

17   and under investigation by defendant Cole and was not closed until January 17, 2020. Dkt. 54 at

18   3. This was because the Department of Health was conducting a parallel independent

19   investigation and "the interview and outcome of that report would be considered as part of the

20

21   _____

22   [5] The copy of plaintiff's kite containing his PREA complaint which is attached to the
     amended complaint is illegible. Dkt. 11 at 54. The kite is transcribed in DOC's PREA file and

23   states, in pertinent part, plaintiff was "sexually assaulted" when during defendant Berkey's
     examination of him she "decided to rip open my jumpsuit & expose my chest and stomach area"

24   and "grope[d] me without my consent." Dkt. 54-1 at 2.

PREA investigation." *Id*. DOC's investigation report, signed by defendant Cole, shows the investigation was closed on January 17, 2020 and determined the complaint was unfounded because Berkey's examination of plaintiff was "witnessed by others," who stated it was not unusual and was "done according to Nursing Protocol." Dkt. 54-1 at 2, 6. The report relied upon an interview of plaintiff conducted on October 22, 2019 by Todd Tehar of the Department of Health and written statements from defendants Berkey and Johnson, as well as a review of all of plaintiff's medical kites since his arrival at SCCC. *Id*. at 9–13. The report file includes an emailed report of an additional interview of plaintiff, conducted by SCCC Correctional Unit Supervisor Stefanie Baltzell on September 13, 2019. *Id*. at 24. The report also considered plaintiff's multiple follow-up allegations of retaliation, including complaints of Parris and Johnson ignoring his kites and of defendant Johnson harassing him by banging on his door—and concludes they were not retaliatory. *Id*. at 13 –15.

Defendant Parris submitted a declaration, in which he states he responded to plaintiff's kites requesting anti-depressants by offering to connect plaintiff with mental health services— which plaintiff did not accept. Dkt. 55 at 2. Attached copies of plaintiff's kites confirm plaintiff was referred to mental health services. Dkt. 55-1 at 2, 4, 6. Defendant Parris does not himself have the education or training to make medical decisions or to prescribe medication. Dkt. 55 at 1. According to defendant Parris, kites referring to PREA matters were forwarded to the Shift Lieutenant because of their confidential nature. Dkt. 55 at 2. Parris further states, with respect to plaintiff's allegations concerning defendant Johnson, that she was present at the IMU because it was her normal duty station. Dkt. 55 at 2. However, defendant Johnson was always escorted while conducting rounds within the unit and worked only the second of the three nursing shifts. *Id*. Further, Parris states defendant Johnson was not scheduled to work on December 7, 2019—

1    the date plaintiff alleges she harassed him by banging on his door. Dkt. 55 at 2. *See also* Dkt. 54-

2    1 at 108 (nursing schedule for week of December 1-7, 2019). Finally, Parris states prisoners at

3    SCCC communicate their medical needs through kites, which may be placed at their cell doors

4    for pickup either by correctional officers or by nursing staff. *Id*. at 3. Pill lines are conducted

5    three times per day, spanning the second and third shifts. *Id*. Thus, if plaintiff did not wish to

6    deliver kites to or receive pills from defendant Johnson, he could choose to interact with the

7    nursing staff on the first or third shifts; plaintiff was not required to place his medical requests

8    through defendant Johnson. Dkt. 55 at 3.

9    **III.    Standard of Review**

10          Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

11    file, and any affidavits, show there is no genuine dispute as to any material fact and the movant is

12    entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to

13    judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an

14    essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*

15    *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Mere disagreement or bald assertions stating a

16    genuine issue of material fact exists does not preclude summary judgment. *California*

17    *Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th

18    Cir. 1987). Allegations based merely on the plaintiff's belief are insufficient to oppose summary

19    judgment, as are unsupported conjecture and conclusory statements. *See Hernandez v. Spacelabs*

20    *Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). There is no genuine issue of fact for trial where

21    the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving

22    party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving

23    party must present specific, significant probative evidence, not simply "some metaphysical

24

1   doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists

2   if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to

3   resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253

4   (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

5   **IV.   Discussion**

6          In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove: (l) the conduct

7   complained of was committed by a person acting under color of state law and (2) the conduct

8   deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

9   United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels*

10  *v. Williams*, 474 U.S. 327 (1986).

11         *A.  Conditions of Confinement Claim*

12                 1.      <u>Legal Standard</u>

13         To state a claim for unconstitutional conditions of confinement, a plaintiff must establish

14  a defendant's acts or omissions have deprived him of "the minimal civilized measure of life's

15  necessities" and the defendant acted with deliberate indifference to an excessive risk to the

16  prisoner's health or safety. *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer v.*

17  *Brennan,* 511 U.S. 825, 834 (1994)). "The circumstances, nature, and duration of a deprivation

18  of [ ] necessities must be considered in determining whether a constitutional violation has

19  occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), *cert. denied,* 532 U.S. 1065

20  (2001). To establish a violation of the Cruel and Unusual Punishment Clause, a prisoner must

21  make an "'objective showing' that the deprivation was 'sufficiently serious' to form the basis for

22  an Eighth Amendment violation". *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

23  Second, a prison official must have a "sufficiently culpable state of mind." *Id.* at 834 (internal

24

1  quotations omitted). "In prison-conditions cases th[e] state of mind is one of 'deliberate

2  indifference' to inmate health or safety[.]" *Id.* (*citing Wilson*, 501 U.S. at 302–03). A prison

3  official does not act with deliberate indifference "unless the official knows of and disregards an

4  excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837.

5        The Ninth Circuit has held "[i]ndigent inmates have the right to personal hygiene

6  supplies such as toothbrushes and soap," and denial of these items could state a claim for lack of

7  sanitation. *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *opinion amended on denial of*

8  *reh'g,* 135 F.3d 1318 (9th Cir. 1998). Other Circuits have found a temporary deprivation of

9  hygiene supplies does not rise to the level of an Eighth Amendment violation. *See Harris v.*

10  *Fleming*, 839 F.2d 1232, 1234–36 (7th Cir. 1988) (no violation when inmate was deprived of

11  soap, toothbrush, and toothpaste for ten days), and *Williams v. Delo*, 49 F.3d 442, 445–46 (8th

12  Cir. 1995) (denial of toothbrush, toothpaste, soap, and deodorant for four days was not a

13  deprivation of the minimal civilized nature of life's necessities). However, deprivation of hygiene

14  items for an "extended period of time" is more than a temporary deprivation and can meet the

15  objective prong of the Eighth Amendment analysis. *See Garcia v. Cluck*, No. 12-CV-718 AJB

16  NLS, 2012 WL 6045908, at *3 (S.D. Cal. Nov. 2, 2012), *report and recommendation*

17  *adopted,* No. 12CV718 AJB NLS, 2012 WL 6045937 (S.D. Cal. Dec. 5, 2012).

18              2.    <u>Medical Defendants (Berkey, Johnson and Creswell)</u>

19        It is undisputed SCCC provides soap to residents in its IMU unit. Dkt. 11 at 1 (IMU store

20  list offers a "single option soap"). Plaintiff contends he is deprived of soap only because he

21  claims he is allergic to the provided product. *Id*. But plaintiff has failed to come forward with

22  any evidence, aside from his own bald assertion, that he has such an allergy. While this was

23  sufficient at the pleading stage, where plaintiff's allegations were taken as true, at the summary

24

judgment stage plaintiff must come forward with evidence to support his claim. *Celotex*, 477 U.S. at 322–23.

Defendants' evidence shows plaintiff was examined by at least five medical professionals who found no sign of a soap allergy. Dkt. 52-1 at 21–22, 35, 38, 41, 43; Dkt. 53. Plaintiff bears the burden to rebut this evidence and has failed to do so. The Ninth Circuit has affirmed grants of summary judgment against prisoners under these circumstances. In *Wilhelm v. Enenmoh*, 608 F. App'x 513, 514 (9th Cir. 2015), the Ninth Circuit held plaintiff failed to establish a serious medical need for alternative soap or the deliberate indifference of a prison doctor who denied a prescription for non-prison-issued soap. The district court had found plaintiff was "not qualified to provide a medical opinion as to an alleged need for medical soap" and plaintiff's medical records did not provide any evidence plaintiff was allergic to the prison-provided soap or required a prescription for medicated soap. *Wilhelm v. Enenmoh*, No. 1:10-CV-01663-LJO, 2013 WL 3212367, at *6–7 (E.D. Cal. June 24, 2013), *aff'd*, 608 F. App'x 513 (9th Cir. 2015). In light of the lack of any allergy diagnosis, there was no evidence of deliberate indifference by the doctor and plaintiff failed to establish an Eighth Amendment claim. *Id. See also Martin v. Morris*, No. CV 10-5232-PSG PJW, 2013 WL 4588735, at *2–3 *(C.D. Cal. Aug. 28, 2013)*, *aff'd*, 586 F. App'x 358 (9th Cir. 2014) ("While Plaintiff contends that he could not maintain his hygiene because he is allergic to prison soap and could not afford special soap, Defendant doctors never diagnosed him with a soap allergy;" therefore, defendants were entitled to summary judgment because "Plaintiff bears the burden of establishing that he was allergic to prison soap and needed special soap to maintain his hygiene and he failed to do so here"); *Parks v. McDaniel*, No. 03:06-CV-00095LRHVPC, 2007 WL 2891499, at *10 (D. Nev. Sept. 28,

2007) (An allegation of an allergy to soap, without proof of the allergy or the harm it inflicts, is not enough to meet the "objectively, sufficiently serious" deprivation requirement.).

Plaintiff asserts he had not been using soap at the time of his medical examinations so he could not be expected to present to those examinations with symptoms of an allergy. But defendants have presented evidence, not rebutted by plaintiff, that plaintiff's examination by Dr. Aurich took place immediately after his shower, to which he had brought IMU soap. Dkt. 52-1 at 43; Dkt. 64 at 234–135. Furthermore, plaintiff has provided no medical evidence he has an allergy, which is an essential element of his claim. *Wilhelm*, 2013 WL 3212367, at *6–7; *Martin* 2013 WL 4588735, at *2–3; *Parks* 2007 WL 2891499, at *10.

Plaintiff's Eighth Amendment claims against defendant Berkey, Johnson and Creswell should be dismissed because plaintiff has failed to meet his burden to establish an Eighth Amendment violation.

### 3.    Personal Participation of Remaining Defendants

To obtain relief against a defendant under Section 1983, a plaintiff must prove a particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). To be liable for causing the deprivation of a constitutional right, each defendant must commit an affirmative act, or omit to perform an act he or she is legally required to do, which causes plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff must establish facts showing the individual defendant participated in or directed the alleged violation or knew of the violation and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer v. Murphy,* 844 F.2d 628, 634

1   (9th Cir. 1988). A plaintiff must set forth the specific factual basis supporting his claim for each

2   defendant's liability. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

3        Furthermore, a Section 1983 action may not be brought against a supervisor on a theory

4   the supervisor is liable for the acts of his or her subordinates. *See Polk Cty. V. Dodson*, 454 U.S.

5   312, 325 (1981); *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978).

6   Absent some personal involvement by the defendants in the allegedly unlawful conduct of

7   subordinates, a supervisor cannot be held liable under Section 1983. *Johnson*, 588 F.2d at 743-

8   44.

9                  a.   <u>Defendants Thrasher, Sinclair and Haynes</u>

10        Plaintiff alleges defendants Thrasher, Sinclair and Haynes are liable because of their

11   positions as supervisors and/or DOC executives. Dkt. 11 at 1–2. Plaintiff's complaint provides

12   only conclusory allegations attempting to connect Defendants Thrasher or Sinclair to the alleged

13   constitutional violations. *See Id.* ("the IMU Store list . . . is controlled [and] created by Thrasher,

14   Sinclair, [and] Caldwell thus their refusal to update it after both my grievances denied me soap").

15   Plaintiff does not allege defendants Thrasher or Sinclair were aware of plaintiff's complaints

16   regarding the denial of soap, to which SCCC medical staff responded. *See Id.* at 1-2. Plaintiff

17   does not establish defendants Thrasher or Sinclair were on notice plaintiff was allergic to the

18   IMU soap. With respect to defendant Haynes, plaintiff alleges only that he sent Haynes a

19   medical kite, to which a different SCCC employee responded, stating the issue had been

20   addressed by medical. Dkt. 11 at 48. Plaintiff's summary judgment response submits no evidence

21   against defendants Sinclair, Thrasher or Haynes to bolster the conclusory allegations of the

22   complaint; instead, plaintiff's response regarding his Eighth Amendment claims addresses only

23   the conduct of the medical defendants. Dkt. 64 at 1. Plaintiff has failed to establish defendants

24

Sinclair, Thrasher and Haynes personally participated in the alleged deprivation of soap. The Court therefore recommends plaintiff's claims against them be dismissed.

### b.    Defendants Taylor and Parris

Plaintiff also makes only conclusory allegations lumping defendants Taylor and Parris into a list of defendants who "denied [him] soap." Dkt. 11 at 1. Defendants have submitted evidence that, as Health Services Managers, Parris and Taylor lack authority to make decisions on medically necessary treatment or to prescribe medication; instead, those decisions are left to a prisoner's medical providers. Dkt. 55 at 1. Indeed, plaintiff's claims against defendants Taylor and Parris appears to be premised solely upon their responses to medical kites advising plaintiff to be seen at sick call. Dkt. 11 at 4, 21, 23. But the mere denial of a grievance cannot, without evidence a defendant directly participated, encouraged, authorized or acquiesced in the claimed harm, render a defendant liable for an alleged constitutional violation. *See Johnson v. Hayden*, 2012 WL 652586, at *3 (D. Or. Feb. 10, 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (it is not unconstitutional to merely deny a grievance). Plaintiff has submitted no evidence of any such participation and has therefore failed to support his claims for soap deprivation against defendants Taylor and Parris. The Court therefore recommends plaintiff's claims against them be dismissed.

### c.    Defendants Schubach and Cole

Plaintiff's soap-deprivation claims against defendants Schubach and Cole are even more remote. Although plaintiff includes them in a broadly sweeping group allegation he was "denied soap" by all defendants, he makes no further soap-related allegations against them. The exhibits to the amended complaint reveal these defendants played no role whatever in any of plaintiff's soap-related complaints; their roles relate solely to plaintiff's separate claim (discussed below)

regarding the investigation of his PREA complaint. Dkt. 11 at 91, 95, 102–103. Plaintiff has

submitted no evidence connecting defendants Schubach and Cole to his alleged deprivation of

soap. The Court therefore recommends plaintiff's claims against them be dismissed.

d.    Defendants Dahne, Caldwell and Frederick

Plaintiff's claim against Grievance Coordinator Dahne for the alleged denial of soap

appears to be premised solely upon Dahne's routing of grievances and appeals to the appropriate

higher-level staff at a different institution and his denial on procedural grounds of a grievance

related to plaintiff's medical records. Dkt 11 at 118, 110–112. Plaintiff does not allege defendant

Dahne had any direct involvement in denying his soap-related grievances or any authority to

prevent any future harm related to the alleged denial of soap. This is manifestly insufficient to

establish personal participation in the alleged violation. *Leer*, 844 F.2d at 634.

Plaintiff's evidence related to defendants Frederick and Caldwell is limited to the

grievances attached to the complaint wherein defendant Frederick signed a letter to plaintiff on

behalf of Dale Caldwell indicating plaintiff's appeal of Grievance No. 19682351 would remain

administratively withdrawn. Dkt. 11 at 122. Plaintiff has submitted no evidence indicating

defendants Frederick or Caldwell made any determinations about the merits of plaintiff's

complaints and alleged denial of soap; rather, these defendants merely indicated plaintiff's

appeal was administratively withdrawn because of a timeliness issue. *Id.*

Plaintiff has submitted no evidence defendants Dahne, Caldwell and Frederick personally

participated in the alleged violation; the Eighth Amendment claims against them should therefore

be dismissed.

1    *C. Retaliation Claims*

2        1. <u>Legal Standard</u>

3        Prisoners have a First Amendment right to petition the government through prison

4    grievance procedures and to be free from retaliation for doing so. *See Brodheim v. Cry*, 584 F.3d

5    1262, 1269 (9th Cir. 2009); *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). To prevail

6    on a retaliation claim under Section 1983, a plaintiff must show: (1) an adverse action taken by a

7    state actor against the prisoner (2) because of (3) that prisoner's protected conduct, and such

8    action (4) chilled the inmate's exercise of his First Amendment right or would chill or silence the

9    speech of a person of ordinary firmness and (5) the action did not reasonably advance a

10   legitimate correctional goal. *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005); *Resnick*

11   *v. Hayes*, 213 F.3d 443, 449 (9thCir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994).

12       In order to survive summary judgment, the plaintiff bears the burden of showing there

13   was no legitimate penological objective to the defendant's actions. *See Pratt v. Rowland*, 65 F.3d

14   802, 806 (9th Cir. 1995). A retaliation claim is not plausible if there are "more likely

15   explanations" for the action. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *see, e.g., Pratt*, 65 F.3d

16   at 808. In evaluating a retaliation claim, the Court is required to "'afford appropriate deference

17   and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons

18   for conduct alleged to be retaliatory." *Pratt,* 65 F.3d at 807 (*quoting Sandin,* 515 U.S. 472, 482

19   (1995) ("federal courts ought to afford appropriate deference and flexibility to state officials

20   trying to manage a volatile environment" (citations omitted)).

21       2. <u>Analysis</u>

22       Plaintiff contends defendants Schubach, Cole, Johnson and Parris retaliated against him

23   for filing a PREA complaint against Berkey, Johnson and Caldwell based upon Berkey's

24

1   examination of him during sick call on September 11, 2019. Dkt. 11 at 7. The filing of a PREA

2   complaint is protected conduct. However, plaintiff has failed to establish any adverse action

3   against him caused by his filing of the PREA complaint.

4        First, plaintiff contends the PREA complaint was prematurely closed seven days after he

5   filed it, without an interview. Dkt. 11 at 3. Defendants have submitted evidence showing plaintiff

6   was interviewed twice: once by SCCC Correctional Unit Supervisor Stefanie Baltzell

7   immediately after he filed his complaint and a second time by independent Department of Health

8   investigator Todd Tehar. Dkt. 54-1 at 9, 24. Furthermore, DOC's investigation report, which

9   closes the investigation as unfounded, is dated January 17, 2020. *Id*. at 2. The only evidence in

10   the record regarding the closure of the investigation shows it was closed on January 17, 2020—

11   not, as plaintiff alleges, only seven days after plaintiff's September 12, 2019 complaint.[6]

12        Second, plaintiff contends defendant Parris ignored plaintiff's kites seeking anti-

13   depressants. Dkt. 11 at 9. But the record shows Parris responded to those kites, attempting to set

14   up an appointment with mental health, and continuing to offer to connect plaintiff with mental

15   health services in response to subsequent kites. Dkt. 55 at 2; Dkt. 55-1 at 2, 4, 6. Defendant

16   Parris is not, himself, trained or authorized to provide medical treatment or to prescribe

17   medication. Dkt. 55 at 1. There is no evidence defendant Parris "ignored" plaintiff's kites;

18   instead, the undisputed evidence shows Parris responded to them.

19

20

21

22        [6] The record does contain a potential explanation for plaintiff's confusion about the
closure date. In a letter dated December 10, 2019, defendant Schubach informed plaintiff that,
according to DOC's records, a separate PREA complaint by plaintiff regarding an incident at a

23   different facility (case number 19-18840) was closed on October 28, 2019. Dkt. 54-1 at 233.
However, as of the date of Schubach's letter, plaintiff's SCCC complaint (number 19-1919)

24   remained open. *Id*.

1    Third, plaintiff claims Johnson's presence in the IMU unit constituted retaliation. Dkt. 11

2    at 9–10. Defendants have supplied evidence Johnson's presence in the unit was not caused by

3    plaintiff's PREA complaint but was instead because the IMU was her regularly scheduled duty

4    station. Dkt. 55 at 2. Finally, defendants have produced evidence defendant Johnson was not in

5    the unit when plaintiff claims he was harassed by banging on his door. *Id.*; Dkt. 54-1 at 108.

6    Plaintiff has not rebutted this evidence.

7    Finally, plaintiff claims he was required, in retaliation for filing his PREA complaint, to

8    go through defendant Johnson to receive any medical care. Dkt. 11 at 10, 11. Defendants have

9    submitted evidence establishing there were multiple options for plaintiff to submit medical kites

10   if he did not wish to communicate with defendant Johnson, including submitting them to

11   correction officers or to nurses on the other two nursing shifts. Dkt. 55 at 3. Plaintiff was not

12   ordered to place his medical requests only through defendant Johnson. *Id*. Further, as to

13   plaintiff's claim he was prevented from receiving treatment for his potentially cancerous mole,

14   the record establishes ARNP Light removed the mole—which was found to be benign—on

15   January 10, 2020. Dkt. 52-1 at 19. Plaintiff obtained that procedure after an exchange of medical

16   kites with Medical Director Dr. Herrington in November 2019; there is no evidence of any

17   involvement in these communications by defendant Johnson. Dkt. 52-1 at 273, 276. The

18   undisputed evidence clearly shows plaintiff was able to access medical care without defendant

19   Johnson's involvement.

20   Defendants have submitted evidence refuting plaintiff's allegations of adverse action and

21   causation. Plaintiff was required, in response, to come forward with evidence he was subjected to

22   adverse action caused by the filing his PREA complaint, but he has submitted "no probative

23   evidence to establish a crucial link in the logical chain required to support [a finding] of

24

retaliation." *Pratt*, 65 F.3d at 807. Plaintiff has provided no evidence beyond his conclusory allegations. This is not sufficient to withstand summary judgment. *Celotex*, 477 U.S. at 323. Plaintiff's retaliation claims should be dismissed.

Finally, in his summary judgment response, plaintiff appears to attempt to re-frame his retaliation claim as one for sexual harassment. Dkt. 64 at 2. But this is not the claim plaintiff pled in his amended complaint, which alleges defendants "violated my 1st Amendment right to redress government without retaliation." Dkt. 11 at 7. It is not appropriate to raise new claims in a summary judgment response and plaintiff has not sought leave to amend his amended complaint. *See Perez v. Vitas Healthcare Corp.*, 739 F. App'x 405, 407 (9th Cir. 2018) (no error in refusing to consider claim advanced for the first time in opposition to summary judgment.). The Court will therefore not consider this claim.

### D. Grievance Process Claims

Plaintiff alleges his constitutional rights under the First and Fourteenth Amendment were violated because the grievance process does not include a method for recording the date and time when a grievance or a response is filed. Dkt 11 at 6-7. Defendants argue plaintiff's claim fails because he does not have a right to a specific grievance process. Dkt 51 at 17-18.

 "It is well-established that, among the rights [prisoners] retain, prisoners have a First Amendment right to file grievances." *Brodheim*, 584 F.3d at 1269. Further, even during incarceration, prisoners retain their Fourteenth Amendment due process protections. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). However, "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Prisoners "lack a separate constitutional entitlement to a specific prison grievance

1    procedure," so a stand-alone claim based on a deprivation of the grievance procedure does not

2    implicate due process. *Ramirez*, 334 F.3d at 860 (citing *Mann*, 855 F.2d at 640).

3        Here, plaintiff alleges his grievances were unlawfully rejected. Dkt. 11 at 6-7. Plaintiff

4    does have a right to file grievances. *Brodheim,* 584 F.3d at 1269. However, he does not have a

5    right to any specific grievance process. *Ramirez,* 334 F.3d at 860. Plaintiff has alleged his

6    grievances were wrongfully denied; however, the amended complaint and its attachments

7    demonstrate plaintiff was able to access the grievance process and he filed several grievances

8    and pursued them through the levels of appeal. *See*, *e.g.*, Dkt. 11 at 110–120; Dkt. 64 at 130–

9    135. Simply because plaintiff disagrees with the disposition of his grievances and appeals does

10   not indicate any constitutional violation or wrongdoing on the part of defendants. Because

11   plaintiff has no standalone right to any particular grievance process, he has not stated a claim.

12   Therefore, the Court recommends dismissal of plaintiff's First and Fourteenth Amendment

13   claims regarding the grievance process as a matter of law.

14       *E.   Qualified Immunity*

15       Because the Court recommends dismissal of all of plaintiff's claims on other grounds, it

16   does not reach defendants' argument they are also entitled to qualified immunity.

17       *F.   In Forma Pauperis Status on Appeal*

18       *In forma pauperis* status on appeal shall not be granted if the district court certifies

19   "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed.

20   R. App. P. 24(a)(3)(A); see also 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith"

21   requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous

22   where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir.

23   1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

24

1    Here, as noted above, plaintiff has failed to adduce sufficient evidence to defeat summary

2 judgment on all of his claims. Accordingly, the undersigned recommends plaintiff's *in forma*

3 *pauperis* status be revoked for purposes of any appeal.

4 **V.    Conclusion**

5    For the above stated reasons, the Court recommends Defendants' Motion for Summary

6 Judgment (Dkt. 51) be granted and plaintiff's claims be dismissed with prejudice and this case

7 closed.

8    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen

9 (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure

10 to file objections will result in a waiver of those objections for purposes of *de novo* review by the

11 district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R.

12 Civ. P. 72(b), the clerk is directed to set the matter for consideration on March 12, 2021 as noted in

13 the caption.

14    Dated this 24th day of February, 2021.

15

16

David W. Christel
17 United States Magistrate Judge

18

19

20

21

22

23

24